# EXHIBIT C

FILED
DOUGLAS COUNTY
DISTRICT COURT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
CIVIL COURT DEPARTMENT   2023 NOV 16 P 3: 06

JANE DOE,

               *Plaintiff,*

v.

LYFT, INC., *et. al.*

              *Defendants.*

BY_____

Case No.: DG 2023 CV 337
Division No.: 5

Pursuant to K.S.A. Chapter 60

## SUMMONS

To:  LYFT, Inc.
      112 SW 7th Street Suite 3C
      Topeka, Kansas 66603

You are hereby notified that an action has been commenced against you in this

court. You are required to file your answer or motion under K.S.A. 60-212 and

amendments thereto, to the petition with the court and to serve a copy upon:

      Matthew A. Johnston
      926 Cherry Street
      Kansas City, MO 64106

within 21 days after service of summons on you.

_Cindy Wynar_
Clerk of the District Court

_11/16/23_
Date Signed

**Documents to be served with the Summons:**
First Amended Petition

FILED

OCT 3 1 2023

Clerk of the District Court

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
### CIVIL COURT DEPARTMENT

JANE DOE,

              *Plaintiff,*

v.

LYFT, INC.,
Serve Registered Agent:
Corporation Service Company
112 SW 7th Street Suite 3C
Topeka, Kansas 66603

JOSHUA M. WILLIAMS,
Serve:
El Dorado Correctional Facility
1737 US-54
El Dorado, Kansas 67042

MICHALIA D. WILLIAMS,
Serve:
150 Church Road # 503
Branson, Missouri 65616

AND

TERRI PARHAM
Serve:
150 Church Road # 503
Branson, Missouri 65616

              *Defendants.*

Case No.: DG 2023 CV 337
Division No.: 5

Pursuant to K.S.A. Chapter 60

## FIRST AMENDED PETITION

Plaintiff Jane Doe, for her Petition against Defendants LYFT, Inc., Joshua Williams, Michalia Williams, and Terri Parham, states:

1.      On March 5, 2022, Plaintiff was brutally sexually assaulted by drivers on Defendant LYFT, Inc.'s ridesharing app. The drivers were easily able to work for LYFT despite lengthy criminal records and suspended/revoked driver's licenses by submitting fake photographs with their driver application. LYFT regularly fails to adequately confirm that its applicants and drivers are who they claim to be, thereby subjecting vulnerable victims like Plaintiff to violent and dangerous physical and sexual assaults.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Jane Doe ("Plaintiff") is a young adult woman who is a citizen of Kansas residing in Lawrence, Kansas. Plaintiff has filed contemporaneously herewith her Motion for Leave to Proceed Pseudonymously in accordance with *Unwitting Victim v. C.S.*, 273 Kan. 937 (2002).

3.      Defendant LYFT, Inc. ("LYFT") is a Delaware corporation with its principal place of business in California, and at all times mentioned herein operating by and through its respective agents, apparent agents, servants and employees, who were at all times acting within the course and scope of their employment, agency and service and in furtherance of the business interests of said defendant; and said corporation is subject to the jurisdiction of Kansas by committing the tortious acts alleged herein in Kansas, transacting business in Kansas, and/or causing injury to persons in Kansas while engaging in solicitation or service activities in Kansas,

2

...

and/or causing injury to persons in Kansas while products manufactured by LYFT wore used in Kansas in the ordinary course of trade or use.

4.      Defendant Joshua Williams is a citizen of Kansas who currently resides at El Dorado Correctional Facility, 1737 US-54, El Dorado, Kansas 67042. Immediately prior to his arrest and incarceration, Defendant Joshua Williams resided in Lenexa, Kansas.

5.      Defendant Michalia Williams is a citizen of Missouri who resides at 150 Church Road # 503, Branson, Missouri 65616.

6.      Defendant Terri Parham is a citizen of Missouri who resides at 150 Church Road # 503, Branson, Missouri 65616.

7.      This Court has jurisdiction over the parties and venue is proper before this Court because the cause of action arose in Douglas County, Kansas.

GENERAL ALLEGATIONS

8.      LYFT is a popular public transportation company, which exercises control over its passengers and provides transportation to the general public. As such, Defendant LYFT is directly liable for its negligent hiring, supervision and retention of LYFT drivers Terri Parham, Joshua Williams, and Michalia Williams. Defendant LYFT is also vicariously liable for its employees' and actual and/or apparent agents' intentional and negligent torts.

9.      Since its inception in 2008, LYFT has grown rapidly from a handful of drivers into a multi-billion dollar enterprise with operations throughout the United

3

States and Canada. In April 2019, LYFT had an initial public offering ("IPO") valuing the company at $24 billion. LYFT's unprecedented growth is due in large part to lax hiring and sham security screening processes along with an evasion of regulation that makes it easy for individuals to become official LYFT drivers. At the same time, LYFT fraudulently markets itself as a safer, better alternative to other methods of transportation, particularly targeting young women.

10.     LYFT connects drivers and passengers through a downloadable App called "LYFT." Individuals who have downloaded the LYFT App use it to make a transportation request. LYFT matches the rider with a LYFT driver who, also signed into the LYFT App, picks up the rider and drives them to a destination. LYFT chooses what information to provide to the drivers and when to provide it. LYFT typically does not disclose the rider's destination until the ride begins. App users must pay LYFT for the ride with a credit card authorized through the App. LYFT establishes the rate for a given ride (rates can vary depending on the demand levels, promotional deals, and other facts), collects the fare, pays the driver a share of the fare collected, and retains the remainder. LYFT drivers remain unaware of the total amount LYFT collects for any given ride.

11.     LYFT's business model requires an enormous pool of drivers in order to provide rides to consumers quickly and efficiently. To accomplish this, LYFT solicits and retains thousands of drivers. LYFT expanded nationally by entering cities and ignoring long-standing legal and regulatory authority for taxi and limousine services.

4

By disregarding safety regulations, and by hiring non-professional drivers, LYFT dominated the vehicle-for-hire market in short time.

12.   LYFT knows of the extreme risk of sexual assault faced by its riders.

13.   LYFT now publishes annual data regarding sexual assaults suffered by its users. LYFT decided to publish the data nearly two years after its biggest competitor, UBER, voluntarily made its data publicly available. LYFT has demonstrated a pattern of changing its sexual assault policies only after it feels compelled to do so in response to competitive pressure from UBER. For instance, LYFT now exempts claims of sexual assault from its mandatory arbitration policy, but only after UBER published its decision to do so.

14.   LYFT's 2021 Community Safety Report revealed 4,158 sexual assaults between 2017 and 2019, including 360 instances of "non-consensual sexual penetration," better known as "rapes."

15.   LYFT has not published how many users like Plaintiff were raped in 2022.

16.   When LYFT receives notice that one of its passengers suffered a sexual assault at the hands of a driver, LYFT engages in aggressive victim blaming in an attempt to escape responsibility.

17.   LYFT's conduct in failing to adequately screen driver applicants, despite knowledge of the extreme risk posed to riders, evidences a conscious attitude and

5

corporate policy of "profits over people" characterized by a willful disregard of the rights and safety of its passengers.

18.    LYFT, from the highest executive levels, including directors, officers, and managing agents, made an intentional decision to conduct inadequate and careless screening of its drivers. To cut costs, LYFT uses a screening method that is inherently flawed. Specifically, the screening methods used by LYFT cannot assure the person behind the wheel does not have a violent criminal record or other troubling background information that would cause a reasonable company to make further inquiries.

19.    LYFT requires individuals to apply for driving privileges through their company website. The application process is entirely online and involves filling out a few short forms. As part of the process, LYFT requires that all applicants submit a photo of their face and a photo of an identification document (*e.g.*, a driver's license) to allegedly confirm the identity of the applicant prior to the driver using the LYFT platform.

20.    LYFT claims it uses biometric information to compare the photos to confirm the identity of the applicant before the applicant is made an official LYFT driver.

21.    LYFT's App and screening process is grossly insufficient to prevent violent criminals from registering or impersonating LYFT drivers. Specifically, LYFT

6

does not adequately compare the applicant's photo and photo identification document to confirm the identity of the applicant before the driver uses the LYFT platform.

22.     The alleged biometric verification process either does not exist or is grossly insufficient to prevent criminals from using LYFT's platform.

23.     LYFT also fails to adequately continuously monitor the identity of drivers using its App.

24.     LYFT is and has been aware that its security screening processes are grossly insufficient to prevent violent criminals from using its platform as LYFT drivers.

25.     These violent criminals can and do get matched with LYFT ride requests through the LYFT App, exposing riders to dangerous and violent situations without their knowledge.

26.     LYFT also does nothing to ensure that its drivers are not intoxicated or under the influence of drugs or medication while providing transportation for LYFT customers.

27.     Because of LYFT's deficient and/or non-existent security screening process, its customers cannot be assured whether they are in safe hands with a vetted professional driver or whether they are in a vehicle with a violent criminal.

28.     As a result of LYFT's deficient and/or non-existent security screening process, LYFT permits anyone to act as drivers on its platform.

## THE FAKE APPLICATION

29.   On or about February 1, 2022 LYFT received a driver application under the name "Terri Parham" (the "Application").

30.   As part of the Application, LYFT required the applicant to submit a photo of his or her face and a photo of an identification document (*e.g.*, a driver's license).

31.   As part of the Application, LYFT received the following  copy of Defendant Terri Parham's driver's license (redacted):



32.   LYFT also received the following photo as part of the Application:

8



33.     Clearly, the above photograph does not depict Terri Parham, but rather Defendant Michalia Williams, who is approximately 23 years younger and is easily distinguished from Terri Parham.

34.     Michalia Williams is convicted criminal.

35.     Terri Parham had also previously been charged with and convicted of crimes.

36.     At the time the Application was submitted to LYFT, Defendant Michalia Williams did not have a valid driver's license.

37.     Prior to approving the Application, LYFT was also on notice that the vehicle, phone number, email, and vehicle insurance were in the name of Defendant Joshua Williams, a convicted felon.

38.     Despite receiving the above information and photographs depicting two different individuals easily distinguishable by age and physical appearance, LYFT approved the Application thereby permitting Defendant Michalia Williams and

9

Defendant Joshua Williams to work as a LYFT drivers under the name "Terri Parham."

## THE SEXUAL ASSAULT

39.     On the evening of March 5, 2022, Plaintiff had been consuming alcohol so she decided to use the ride hailing service offered by LYFT to visit the liquor store to purchase a bottle of wine. Plaintiff used the LYFT App and entered the address of her destination.

40.     Plaintiff was assigned a driver named "Terri." LYFT advises passengers that they should verify that the photo LYFT provides matches prior to entering the vehicle. Below is the photograph of the LYFT driver LYFT provided to Plaintiff for security confirmation.



41.     Plaintiff recognized the woman in the vehicle as the woman in the photo LYFT provided. Plaintiff was also able to recognize the vehicle based on the description provided by LYFT's App.

42.     Plaintiff relied on the photograph LYFT provided and entered the vehicle.

43.     Defendant Michalia Williams was in the vehicle along with her husband Defendant Joshua Williams. Unbeknownst to Plaintiff, Defendant Joshua Williams has an extensive criminal record, including convictions of aggravated assault, battery, disorderly conduct, driving with a suspended license, possession of a controlled substance, and unlawful possession of drug paraphernalia.

44.     Plaintiff entered the vehicle based on the understanding that Defendants Michalia Williams and Joshua Williams were professional drivers, that they were LYFT's agents acting on LYFT's behalf, and that they had been vetted by LYFT and held to what she believed were LYFT's high standards of safety and professionalism.

45.     Once Plaintiff entered the vehicle, Defendants Joshua Williams and Michalia Williams drove Plaintiff to her destination and back home to her apartment.

46.     During the course of the LYFT ride, Defendants Michalia Williams and Joshua Williams assaulted Plaintiff and used a scheme to manipulate Plaintiff in order to gain access to her apartment. They deactivated the LYFT App and entered Plaintiff's apartment at the conclusion of the ride.

47.     Plaintiff texted her friend "Help me."

48.     Defendants Joshua Williams and Michalia Williams violently raped Plaintiff while she was intoxicated, unconscious and physically powerless.

49.     After raping Plaintiff, Defendants Joshua Williams and Michalia Williams stole several of Plaintiff's personal belongings and fled the scene.

50.    The next morning, Plaintiff sought medical attention at a hospital located in Lawrence, Kansas. Medical personnel performed a sexual assault exam and the investigation was referred to the Lawrence Police Department.

51.    Defendants Joshua Williams and Michalia Williams were charged with aggravated criminal sodomy and theft.

52.    Defendant Joshua Williams pled guilty to felony aggravated battery and was sentenced to 32 months in prison. Defendant Michalia Williams pled guilty to two counts of felony theft.

53.    LYFT has not been criminally charged for its role in causing Plaintiff's rape. When Plaintiff called to notify LYFT of the sexual assault, LYFT hung up on her. Plaintiff is left to pursue civil justice with the hope this never happens to another young woman in Lawrence or anywhere else.

54.    Plaintiff's life will never be the same as a result of this violent sexual assault. Plaintiff's physical injuries included bruises, tears, trauma, bleeding and other injuries commonly found in cases of violent sexual assault. Plaintiff has suffered, and will continue to suffer, extreme and severe mental and emotional trauma, post-traumatic stress disorder, nightmares, anxiety, stress, behavioral changes, mental anguish and loss of enjoyment of life as a result of the needless trauma she suffered as a result of LYFT's negligence.

55.   In addition to the physical trauma she experienced, Plaintiff continues to suffer severe emotional distress as a result of the rape, including severe post-traumatic stress disorder

## COUNT I – NEGLIGENCE
### Against LYFT, Inc.

56.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57.   LYFT owed a duty of reasonable care to Plaintiff.

58.   LYFT owed Plaintiff a duty of reasonable care in the hiring, training, and supervision of its drivers.

59.   LYFT breached its duties in one or more of the following respects:

  (a)   Failing to verify the identity of the applicant;

  (b)   Failing to deny Defendant Michalia Williams authority to operate as a LYFT driver;

  (c)   Failing to deny Defendant Joshua Williams authority to operate as a LYFT driver;

  (d)   Failing to deny Defendant Terri Parham authority to operate as a LYFT driver;

  (e)   Permitting Defendants Michalia Williams, Joshua Williams, and Terri Parham to pose a danger and threat to the riding public, including Plaintiff;

  (f)   Failing to conduct interviews of applicants;

13

(g)     Failing to develop and implement screening measures sufficient
        to confirm the identities of applicants;

(h)     Failing to develop an adequate system to continuously monitor
        and confirm the identities of drivers using the LYFT App;

(i)     Failing to develop adequate security measures to prevent
        imposter drivers;

(j)     Failing to develop and implement measures to supervise and
        protect LYFT riders like Plaintiff;

(k)     Failing to verify that the documents submitted are accurate or
        actually pertain to the applicant.

(l)     Failing to require the name and/or contact information on the
        payment method for the driver to match the name on the account
        with LYFT;

(m)     Failing to have stringent and/or heightened user, age, and/or
        account verification requirements;

(n)     Failing to properly develop and implement a system to track
        sexual assaults and take remedial measures to prevent future
        occurrences despite notice of the prevalence of such assaults by
        LYFT drivers;

(o)     Failing to require applicants to attend training classes to prevent
        harassment, including sexual harassment of customers; and

14

(p)     Such other acts and omissions as determined through additional investigation and discovery.

60.     As a direct and proximate result of LYFT's negligence, Plaintiff suffered a violent sexual assault. Plaintiff's physical injuries included bruises, tears, trauma, bleeding and other injuries commonly found in cases of violent sexual assault. Plaintiff has suffered, and will continue to suffer, extreme and severe mental and emotional trauma, post-traumatic stress disorder, nightmares, anxiety, stress, behavioral changes, mental anguish and loss of enjoyment of life as a result of the needless trauma she suffered as a result of LYFT's negligence.

61.     Plaintiff's injuries are permanent and continuing and she will continue to suffer losses in the future.

WHEREFORE, Plaintiff seeks judgment against Defendant LYFT in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

## COUNT II – PRODUCT LIABILITY
### Against Defendant LYFT, Inc.

62.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

63.     LYFT designed, manufactured, marketed and distributed its ride sharing platform and app (the "LYFT App") for use by drivers and riders in order to generate revenue and profit for LYFT.

15

64.    LYFT had a duty to use ordinary care in the design and manufacture of the LYFT App so that it would be reasonably safe for the use for which it was intended or which could be reasonably anticipated.

65.    LYFT failed to exercise ordinary care to design and manufacture the LYFT App in such a way that the LYFT App was reasonably safe for the ordinary consumer who possesses knowledge common to the community as to the LYFT App's characteristics.

66.    At the time the LYFT App left LYFT's control and was used by Plaintiff, the LYFT App was defective and unreasonably dangerous to consumers and users such as Plaintiff.

67.    More specifically, the LYFT App was defective and unreasonably dangerous and/or LYFT was negligent in designing and/or manufacturing the LYFT App in one or more of the following respects:

(a)    The LYFT App does not have screening measures sufficient to confirm the identities of applicants or drivers;

(b)    The LYFT App does not utilize a surveillance camera that can audio and video record rides;

(c)    The LYFT App does not utilize the camera to verify the identity of the driver during the LYFT ride or at intervals sufficient to mitigate the risk of imposter drivers;

16

(d)    The LYFT App does not have the ability to determine if a driver deviates from protocol;

(e)    The LYFT App does not send a message to the passenger when the driver deviates or goes off course; and

(f)    In other respects unknown at this time that are revealed throughout further investigation and discovery.

68.    As a direct and proximate result of the defects in the LYFT App and/or negligence of LYFT in designing and manufacturing the LYFT App, Plaintiff was sexually assaulted and sustained the injuries and damages described above.

WHEREFORE, Plaintiff seeks judgment against Defendant LYFT in an amount to be proven at trial in excess of $75,000.00, for post-judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

## COUNT III – ASSAULT AND BATTERY
### Against Defendants Michalia Williams, Joshua Williams, and LYFT, Inc.

69.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

70.    At all times relevant, Defendants Michalia Williams and Joshua Williams were acting within the scope of their agency as actual and/or apparent agents of LYFT when they accepted the fare via the LYFT App and picked up Plaintiff.

17

71.     At all times relevant, Plaintiff was a lawful passenger in the aforementioned LYFT vehicle, which was being operated for the benefit of LYFT.

72.     During the course of the LYFT ride, Defendants made unwanted and unpermitted sexual physical contact with Plaintiff.

73.     Defendants Joshua Williams and Michalia Williams violently raped Plaintiff while she was intoxicated, unconscious and physically powerless.

74.     LYFT, as a common or other transportation carrier exercising control over its passengers and their safety, owed the highest and nondelegable duty of care to provide a safe environment for its patrons that were lawfully in its vehicles.

75.     As a direct result of the assault and battery by Defendants Michalia Williams and Joshua Williams, individually, and as actual and/or apparent agents of LYFT, Plaintiff sustained the injuries and damages described above.

76.     Defendant LYFT is vicariously liable for its actual and/or apparent agents' sexual assault on Plaintiff.

77.     LYFT carelessly caused or permitted Plaintiff to reasonably believe that Defendants Michalia Williams and Joshua Williams were LYFT's agents. Plaintiff had a right to rely on that belief.

WHEREFORE, Plaintiff seeks judgment against Defendants Michalia Williams, Joshua Williams, and LYFT in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

18

## COUNT IV – NEGLIGENCE
### Against Defendants LYFT and Terri Parham

78.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79.    Defendant Parham owed a duty of reasonable care to Plaintiff.

80.    Defendant Parham breached that duty and was negligent in one or more of the following respects:

    (a)    Failing to prevent Joshua Williams and Michalia Williams from using her driver's license to open a LYFT account;

    (b)    Entrusting Joshua Williams and Michalia Williams to operate her motor vehicle;

    (c)    Such other acts and omissions as determined through additional investigation and discovery.

81.    As a direct and proximate result of Defendant Parham's negligence, Plaintiff sustained the injuries and damages described above.

82.    LYFT is vicariously liable for Parham's conduct because she was in the course and scope of her agency at the time of the negligent acts set forth herein.

WHEREFORE, Plaintiff seeks judgment against Defendants LYFT, Inc. and Parham in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

## COUNT V – FRAUD
### Against Defendant LYFT, Inc.

83.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

84.     LYFT made false representations and false promises.

85.     By displaying a photograph of Defendant Michalia Williams to Plaintiff, LYFT represented that Michalia Williams was a LYFT certified and screened driver.

86.     LYFT falsely represented that its drivers were properly screened and were safe. LYFT promised that it was better and safer than a taxi or public transit. LYFT promised Plaintiff the safest ride possible.

87.     LYFT falsely represented to Plaintiff that it provided a safe alternative to driving at night after drinking.

88.     LYFT knew these representations were false and intended for customers like Plaintiff to rely on them.

89.     LYFT knew that its security screening was deficient, that its background checks were below industry standards and that its drivers were not trained or supervised, or given sexual harassment and abuse standards. LYFT knew that numerous women had been assaulted by LYFT drivers. LYFT knew that it was not safe for intoxicated women to get into cars with its drivers. LYFT intentionally concealed these facts and deliberately represented the opposite—that its drives offered the safest options for solo women who have consumed alcohol seeking transportation.

90.     Plaintiff was not aware LYFT's representations were false.

20

91.    Plaintiff had the right to rely on LYFT's misrepresentations.

92.    Plaintiff relied on LYFT's deliberate misrepresentations to her detriment, which caused her serious, permanent harm. If Plaintiff had known the facts LYFT concealed about its service, its security screening, and its drivers, she would not have accepted the ride. LYFT failed to provide Plaintiff with a safe ride.

WHEREFORE, Plaintiff seeks judgment against Defendant Parham in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

COUNT VI – KCPA
Against Defendant LYFT, Inc.

93.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

94.    LYFT violated the Kansas Consumer Protection Act, K.S.A. 50-623, by engaging in deceptive acts and practices in violation of the Act, including:

   (a)    Representing that LYFT driver were properly screened in violation of K.S.A. 50-626-(b)(1)(F);

   (b)    Engaging in the willful use of exaggeration or falsehoods in violation of K.S.A. 50-626(b)(2);

   (c)    Engaging in the willful failure to state material facts in violation of K.S.A 50-626(b)(3); and

   (d)    Engaging in unconscionable acts in violation of K.S.A. 50-627.

21

95.    Plaintiff has been damaged by LYFT's actions and omissions.

96.    Plaintiff is entitled to her damages and statutory penalties of up to $10,000 per violation for each violation of the Consumer Protection Act.

WHEREFORE, Plaintiff seeks judgment against Defendant LYFT in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

## COUNT VII – NEGLIGENCE PER SE
### Against Defendant LYFT, Inc.

97.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

98.    At all relevant times, Defendant LYFT was a Transportation Network Company ("TNC") subject to the Kansas Transportation Network Company Services Act (the "KTNCSA").

99.    At all relevant times, Defendant LYFT owed a duty not to violate the KTNCSA.

100.   Under K.S.A § 8-2712 (a), prior to permitting an individual to act as a driver on its digital network, a TNC shall require the individual to submit an application to the TNC, which includes information regarding the applicant's address, age, driver's license, driving history, motor vehicle registration, automobile liability insurance and other information required by the TNC.

22

101.    Under K.S.A § 8-2712 (b), a TNC shall obtain and review a driving history research report prior to permitting the individual to act as a driver on its digital network.

102.    Under K.S.A § 8-2720(a)(1)(A) and K.S.A § 8-2720(a)(1)(E), a TNC shall not permit an individual to act as a driver on its digital network who has been convicted of any person felony described in any section of article 34 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 54 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, or a crime under the law of another jurisdiction which is substantially the same as the aforementioned crimes.

103.    Under K.S.A § 8-2720(a)(5)(B) and K.S.A § 8-2720(a)(5)(F), a TNC shall not permit an individual to act as a driver on its digital network who has been convicted, adjudicated or placed on diversion, within the past seven years, of any crime involving controlled substances, as described in K.S.A § 21-36a01 through 21-36a17, prior to their transfer, or article 57 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, or any violation of the uniform controlled substances act prior to July 1, 2009, or a violation of the law or ordinance of another jurisdiction, including any municipality, which is substantially the same as the aforementioned crimes.

104.    Under K.S.A. § 8-2720(a)(6) a TNC shall not permit an individual to act as a driver on its digital network who does not possess a valid driver's license.

23

105.   Under K.S.A. § 8-2706, a TNC's digital network shall display a picture of the driver, and the license plate number of the personal vehicle utilized for providing the prearranged ride before the rider enters the driver's vehicle.

106.   Under K.S.A. § 8-2711(a)-(b), a TNC shall immediately suspend such driver's access to the TNC's digital network and shall conduct an investigation if there is a rider complaint against a driver alleging that the driver was under the influence of drugs or alcohol during the course of the trip.

107.   The KTNCSA is designed to protect Plaintiff and members of the public generally from violent criminals and sexual predators acting as drivers on a TNC's rideshare app.

108.   Plaintiff is within the class of persons protected by the provisions enumerated above and all were designed to prevent the injuries Plaintiff sustained.

109.   Defendant LYFT permitted Defendants Michalia Williams, Joshua Williams, and violated each of the above provisions enumerated above.

110.   As a direct and proximate result of Defendant LYFT's violations of the various provisions enumerated above, Plaintiff sustained serious injuries.

WHEREFORE, Plaintiff seeks judgment against Defendant LYFT in an amount to be proven at trial in excess of $75,000.00, for post judgment interest at the maximum rate allowed by law, for her costs and expenses, and for such other relief as the Court deems just and proper.

Respectfully submitted,

JOSEPH, HOLLANDER & CRAFT LLC

By:  /s/ Andrew J. Goodwin
      Andrew J. Goodwin (25819)
      agoodwin@josephhollander.com
      Matthew A. Johnston (28292)
      mjohnston@josephhollander.com
      926 Cherry St., Suite 200
      Kansas City, Missouri 64106
      T: (816) 297-0800
      F: (816) 787-1379
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable herein.

      /s/  Andrew J. Goodwin
      Attorney for Plaintiff

25

# FAX COVER SHEET

To: __District Court Clerk__

Company: __Douglas County District Court__

Fax: __17858325174__

Date: 10/31/2023

From: __Alyssa Bradford__

Company: __Joseph Hollander & Craft LLC__

Phone: __8166755414__

Pages w/cover: 26

Subject:
DG 2023 CV 337 ; Doe v. Lyft, Inc

Comments:

Enclosed for filing, please find Plaintiff's First Amended Petition.

Thank you

The information and documents contained in this facsimile transmission are intended only for the use of the individual or entity named above.