IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JANE DOE,

          Plaintiff,

v.                                                                                              Case No. 23-2548-JWB-TJJ

LYFT, INC. et al,

          Defendants.

**MEMORANDUM AND ORDER**

This matter came on for hearing August 19, 2025, on Plaintiff's pending motion to remand this case back to the District Court of Douglas County, Kansas, for lack of subject-matter jurisdiction under 28 U.S.C. § 1447(c). (Doc. 80.) Although motions for remand can generally only be filed within 30 days of removal, motions for remand based on lack of subject matter jurisdiction can be filed any time before final judgement. *Grijalva v. Safeway Stores, Inc.*, 996 F.2d 311 (10th Cir. 1993) (unpublished table decision). This motion was fully briefed prior to the hearing (Doc. 80, 82, 83, 84, 85),[1] and the court also heard evidence related to the motion at the hearing. The court now rules on the motion previously taken under advisement. Given that Defendants have failed to meet their burden of showing that complete diversity of citizenship exists, Plaintiff's motion to remand is GRANTED.

This motion turns on the citizenship of Defendant Joshua Williams. Mr. Williams is one of the two Defendants who had been properly served prior to the filing of the present motion.

---

[1] Plaintiff had previously filed a motion to remand on May 27, 2025 (Doc. 69), but the undersigned ordered that motion stricken from the record since it contained unredacted personal information regarding several Defendants. (Doc. 78.) Defendants also filed supplemental evidence in response to the evidence Plaintiff produced at the motion hearing. (Doc. 89.)

Plaintiff argues that he is a citizen of Kansas, thereby destroying the grounds for this court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441. Defendant contends that Joshua Williams is a citizen of Missouri or, in the alternative, a citizen of Colorado.[2]

In removing this case from state court, Defendants bear the burden of proving all facts that would allow the court to exercise jurisdiction by a "preponderance of the evidence." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Karnes v. Boeing Co.*, 335 F.3d 1189, 1194–95 (10th Cir. 2003). *See also Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (gathering cases). If the jurisdictional facts are contested, the court can look beyond the complaint at other evidence regarding jurisdictional facts including "either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). Although there is some conflicting precedent within the Tenth Circuit on whether evidence uncovered during discovery can be considered for subject matter jurisdiction, "it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists." *Thompson v. Intel Corp.*, No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *11 (D.N.M. Aug. 27, 2012). In determining whether removal is proper, "[r]emoval statutes are to be strictly construed . . . and all doubts are to be resolved against removal." *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). Moreover, in the Tenth Circuit, "there is a presumption against removal jurisdiction." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), abrogated on other

---

[2] Defendant argues in the alternative that Joshua Williams could be considered a citizen of Colorado because at the time he was arrested in 2022, he was residing in Colorado with an application for an interstate compact transfer of his then-active probation to Colorado. (Doc 80-16 at 8, 18, 21–22.) Nevertheless, Defendants maintain that he is a citizen of Missouri in their removal notice from Douglas County. (Doc. 1 at ¶ 8.c.) Plaintiff argues that this alternative theory "is inherently self-contradictory" (Doc. 80 at 20), and she also argues that Defendant cannot offer alternative theories of domicile after removal. This is likely an accurate contention as Defendants only pled Joshua Williams was a citizen of Missouri in their removal notice. However, given the disposition of the case as set out *infra*, the court does not need to address this argument.

2

grounds by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

As an initial consideration, "[a]n individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). To establish domicile in a particular state, a person must be physically present in the state and intend to remain there. *Keys Youth Servs., Inc. v. Olathe*, 248 F.3d 1267, 1272 (10th Cir. 2001). "To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). In Kansas, there is a presumption favoring an established domicile over a newly acquired one. *Boone v. Raney*, 668 F. Supp. 3d 1178, 1192 (D. Kan. 2023). However, the complication in this case is that the civil complaint was filed while Joshua Williams was incarcerated in Kansas. "Because domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state." *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006). Nevertheless, this presumption can be rebutted based on the actions a prisoner takes while he is incarcerated to establish connections to a new state to stay there indefinitely. *Jones v. United States*, 305 F. Supp. 2d 1200, 1208 (D. Kan. 2004).[3] "Factors to be weighed in determining domicile include the prisoner's declaration of intentions, 'the possibility of parole ..., the manner in which [he] has ordered his personal and business transactions, and any other factors that are relevant to corroboration of [the prisoner's] statements.'" *Smith*, 445 F.3d at 1260 (citing *Stifel v. Hopkins*, 477 F.2d 1116, 1126–27 (6th Cir.

---

[3] When determining domicile in a civil context (apart from an incarcerated individual), "[t]he court pays particular attention to objective indicia of intent such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices. Additional factors to consider are the party's social attachments in both states, whether he retains a place of abode or investments in local property or enterprise in the old state of residence, whether he has taken his family and his belongings with him, and the manner in which he lives (i.e., whether he rents or buys a home)." *Boone v. Raney*, 668 F. Supp. 3d 1178, 1192 (D. Kan. 2023) (citation omitted).

3

1973)).

Moving to the present case, the parties submitted numerous exhibits along with their briefing on the motion. Plaintiff also offered additional evidence at the motion hearing. However, Defendants did not call Joshua Williams as a witness at the hearing, nor did Plaintiff issue a subpoena for him to appear. As such, the court is left to determine his citizenship on the cold record submitted by the parties.

Much of the arguments by the parties, both in their briefs and at the hearing, focus on the citizenship of Mr. Williams prior to his incarceration in Kansas in May 2022. Both parties agree that the Probation Contact Chronology (Doc. 80-16) is the best record, absent Mr. William's testimony, to determine his citizenship leading up to his arrest and incarceration for the incident underlying this suit. This probation record shows that Mr. Williams led a very unsettled life. (Doc. 80-16.) He lived in various hotels or subsidized housing, and he frequently missed his scheduled meetings with probation officials. With regard to his citizenship, he initially told probation he was a Kansas resident because he was living in a hotel in Lenexa, Kansas, at the time of his sentencing. (*Id.* at 77.) Yet, over the course of this record, Mr. Williams asked for interstate compact transfers of his probation to both Missouri and then to Colorado. (*Id*. at 36–37.) Nevertheless, the reason that Mr. Williams was on probation was because he had previously been arrested following a public altercation at a Walmart in Kansas in June 2021. Following this arrest, he had been sentenced to 12 months of probation starting in January 2022. (Doc. 80-15.) A condition of this probation was that Mr. Williams remain in Kansas during the probation period. (*Id*. *See also* Doc. 80-9 at 10 (transcript 121:12–17).) Therefore, the last time prior to the filing of this suit that Mr. Williams was free to choose his place of domicile was prior to his arrest in June 2021. This means Mr. William's actions between January 2022 and May 2022 are largely irrelevant for jurisdictional

4

purposes because he was generally not free to voluntarily select his state of residence. (*See* Doc. 84-1 at 36 (transcript 207:24–208:2).)

Given the above determination of the relevant period for determining citizenship, the court is left to scavenge the record to see if there are any facts which could support the conclusion that Mr. Williams was a citizen of Missouri or Colorado over being a citizen of Kansas prior to June 2021. The clearest evidence comes from an affidavit by Mr. Williams filed on his behalf by Defendant Lyft. (Doc. 83.) Although Mr. Williams claims that he was a Missouri resident at the time of his arrest in this affidavit, the court finds this sworn testimony of Joshua Williams to be uncorroborated by other evidence in the record. This affidavit was written by attorneys for Defendant Lyft and sent to Mr. Williams to sign. (Doc. 85-2.) However, the factual assertions in this affidavit are contradicted by other evidence in the record. For example, Plaintiff presented an affidavit from a Bobbo Jo Hohnholdt, who presented evidence that Mr. Williams had a Kansas driver's license between 2014 and 2020. (Doc. 80-2 at 4.) This directly contradicts Mr. Williams' affidavit where he says that he never possessed a Kansas driver's license to his knowledge. (Doc. 83 at ¶ 14–15.) Additionally, Mr. Williams' affidavit says he resided in Columbia, Missouri, between October 2015–September 2021. (Doc. 83 at ¶ 21.) At the hearing, Plaintiff produced a different affidavit from Mr. Williams which was filed in a state court proceeding in Missouri which shows that Mr. Williams was in prison in Iowa between 2017–2018 and, in 2019, Mr. Williams was residing in an apartment at 210 Allen Walkway, Columbia, Missouri.[4] This also contradicts Mr. Williams' deposition testimony that he had been living at the address 16101 Eastern Ave., Belton Missouri, for seven years prior to March 2022. (Doc. 84-1 at 4 (transcript 10:4–8).) Nevertheless, this address does not appear to be his permanent, home address. Rather, the

---

[4] The court takes judicial notice of the fact that this address is an apartment complex at corner of Bryant Street and Allen Avenue in Columbia, Missouri based on information provided online by MapQuest.

5

deposition testimony from Michalia Williams states that address is for Mr. Williams's mother, and they have never lived there since they were together starting in December 2020.[5] (Michalia Williams Deposition, 127:19–128:5.)  Mr. Williams claims many times that he never lived in Kansas (*see, e.g.*, Doc. 83 at ¶ 16; 84-1 at 33 (transcript 195:20–21)); however, he and Michalia Williams were living at temporary housing in Lenexa, Kansas, at the time of the Walmart incident.[6] (Doc. 80-9 at 7–10 (transcript 118:21–121:23).)  "A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

Even though there is evidence that Mr. Williams was connected to Missouri, the court is not persuaded that this evidence meets Defendants' burden to show his citizenship in June 2021 by a preponderance of the evidence.  The record in this case is unclear and filled with contradictory statements.  Given that there is a presumption against removing a case to federal court and Mr. Williams apparently resided in Kansas during times leading up to the filing of this case, the court finds that Defendants have failed to meet their burden to show that Mr. Williams is a citizen of Missouri or Colorado.  The court is cognizant of the fact that most of the litigation in this case has

---

[5] The court also notes that this same address was linked to Terri Parham in the documentation for the 2006 Ford Escape at issue in this case (Doc. 85-3); however, Joshua Williams' deposition testimony states that Ms. Parham resided in Springfield, Missouri (Doc. 84-1 at 48 (transcript 242:9–23)), and currently resides in Liberty, Missouri. (Doc. 84-1 at 5 (transcript 16:17–24).)

[6] The court notes that there is a discrepancy between the deposition testimony of Joshua Williams and Michalia Williams on where they were living at the time.  Joshua says that he and Michalia moved from Columbia, Missouri, to an address at 810 Main Street, Belton, Missouri, in late 2020 to early 2021. (Doc. 84-1 at 33 (transcript 194:13–23).)  This was the address where he claims to have been living at the time of the Walmart incident. (*Id*. at 36 (transcript 206:3–18).)  After this home allegedly had black mold that forced them to move, Joshua claims he and Michalia went to Hillcrest transitional housing in downtown Kansas City. (*Id*. at 33 (transcript 195:10–18).)  However, Michalia says that they were living with the kids in temporary housing in Lenexa Studios at the time of the Walmart incident. (Doc. 80-9 at 7–10 (transcript 118:21–121:23).)  The court takes judicial notice of the fact that this is an extended stay hotel at 9775 Lenexa Drive, Lenexa, Kansas.  The court also notes that as of January 21, 2022, which is just after Mr. Williams was sentenced to probation, Kansas probation records reflect that they asked Mr. Williams "where he is residing and he advised in Kansas specifically in Lenexa. [Probation a]sked him why he told the intake officer that he was living in Missouri. He advised he wanted to go back to Missouri to be with his kids but his old residence is no longer an option so he is going to just stay in Kansas." (Doc. 80-16 at 77.)  This could also rise to the level of intent to remain for domicile purposes, but the court need not rule on this issue at this time.

only been between Plaintiff and Defendant Lyft. In fact, Plaintiff has yet to even serve Defendant Terri Parham and Defendant Michalia Williams. However, Defendants have the burden of establishing this court's subject matter jurisdiction to hear this case. Rather than present Mr. Williams as a witness at the hearing on this motion so that the court could evaluate his credibility and resolve the multitude of conflicting evidence in this case that bears on his citizenship, Defendants chose to proceed on documents alone. As described herein, those documents contain irreconcilable differences that can only be resolved by credibility determinations. Defendants, as the parties bearing the burden of proof on this motion, likewise bear the consequences of conflicting documentary evidence with no live witnesses to resolve those inconsistencies. Therefore, Plaintiff's motion to remand must be granted for lack of subject matter jurisdiction.

## Conclusion

Plaintiff's motion to remand to District Court of Douglas County, Kansas (Doc 80) is GRANTED. IT IS SO ORDERED. Dated this 15th day of September, 2025.

                                           s/ John W. Broomes
                                           JOHN W. BROOMES
                                           CHIEF UNITED STATES DISTRICT JUDGE